UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Nicholas Henley, | Case No. 24-CV-00195 (JMB/LIB) |
| Plaintiff, | |
| v. | **ORDER** |
| Neessen Chevrolet, Inc.; Automotive Restyling Concepts, Inc.; BB Motor Sales, LLC; Auto-Owners Insurance Company; | |
| Defendants. | |
| _____ | |
| Auto-Owners Insurance Company, | |
| Cross Claimant, | |
| v. | |
| Automotive Restyling Concepts, Inc.; BB Motor Sales, LLC; | |
| Cross Defendants. | |

---

Mark L. Heaney, Heaney Law Firm, LLC, Minnetonka, MN, for Plaintiff Nicholas Henley.

Chasse Roger Thomas and Ellen Anne Brinkman, Gordon Rees Scully Mansukhani, Minneapolis, MN, for Defendant Neessen Chevrolet, Inc.

Kellen T. Fish and William H. Henney, KTF Law Firm, PLLC, Chanhassen, MN, for Defendant and Cross Defendant Automotive Restyling Concepts, Inc.

Charles K. Maier and David Clifford Archer, Lathrop GPM LLP, Minneapolis, MN, for Defendant and Cross Defendant BB Motor Sales, LLC.

Stephen M. Warner, Arthur, Chapman, Kettering, Smetak & Pikala P.A., Minneapolis, MN, for Defendant and Cross Claimant Auto-Owners Insurance Company.

---

This matter is before the Court on two motions to dismiss. First, Defendant Automotive Restyling Concepts, Inc. (ARC) moves to dismiss Counts I and II of Plaintiff Nicholas Henley's Complaint, which allege violations of the Federal Odometer Act, 49 U.S.C. § 32705(a)(1) and (a)(2), and the Minnesota Odometer Act, Minn. Stat. § 325E.13–.16, for failure to state a claim. (Doc. No. 19.) Second, Defendant Neessen Chevrolet, Inc. (Neessen) moves to dismiss Count I of the Complaint for lack of personal jurisdiction and for being commenced outside the limitations period. (Doc. No. 27.) For the reasons discussed below, the Court denies both motions.

## BACKGROUND

Both Neessen and ARC have been in the business of buying and selling new and used vehicles for decades. (Doc. No. 1 [hereinafter, "Compl."] ¶¶ 24, 30.) Neessen operates its dealership in Texas, and ARC operates its dealership in Minnesota. (*Id.* ¶¶ 6, 7.) Henley is a Minnesota resident who purchased a Chevrolet pickup truck in January 2022. (*Id.* ¶¶ 5, 10.) A summary of the factual allegations from the Complaint regarding the truck's purchase and mileage history follows.

In November 2014, Rogelio Alvarado (R.A.) purchased the truck in Texas. (*Id.* ¶ 20.) At the time of that purchase, the truck had only sixteen miles on its odometer. (*Id.*) The Complaint includes facts concerning the truck's mileage history, in part because vehicles registered in Texas must undergo and pass an annual inspection, the results of which are publicly available and include a statement of the vehicle's odometer reading on the date of testing. (*Id.* ¶ 21.) In addition, the Complaint bases the mileage history on reports used in the regular course of purchasing and selling vehicles, which detail the

2

truck's history and show that the truck's odometer mileage was reported at 112,530 in January 2017 and 201,532 in September 2018. (*Id.* ¶¶ 21–22, 24, 30, 35.) A year later, in August 2019, R.A. sold the truck to Neessen. (*Id.* ¶ 23.) Despite the previous reports of the truck's mileage, the truck's mileage was certified, on the assignment of title accompanying the August 2019 sale to Neessen, as only 89,445. (*Id.*)

In November 2019, Neessen put the truck up for sale at an auto auction in Texas. (*Id.* ¶ 26.) The auction company advised that the odometer on the truck did not reflect the actual mileage and included the phrase "not actual miles" in advertising materials for the truck. (*Id.*) Later that month, Neessen sold the truck to ARC. (*Id.*) On the assignment of title accompanying this sale, Neessen certified that the truck's odometer read 90,103, but a representative of Neessen also signed an Affidavit of Fact purporting to correct inaccuracies in the disclosures that it made in the assignment of title and listing the mileage as 150,025. (*Id.* ¶¶ 26–28.)

ARC then transferred the truck to Minnesota where it advertised the truck for sale at its auto dealership. (*Id.* ¶ 29.) In early 2020, ARC sold the truck to Felipe Erasto Ardid Soriano (F.S.). (*Id.* ¶ 32.) As part of that sale, ARC certified that the truck's odometer reading of 90,277 was the truck's actual mileage. (*Id.*) ARC also completed an application to title the truck in Minnesota in F.S.'s name, in which it once again certified that the truck's actual mileage was 90,277. (*Id.*) ARC included Neessen's Affidavit of Fact in the paperwork it submitted as part of that title application, which showed the mileage ARC was certifying was not the truck's actual mileage. (*Id.*)

3

In March 2020, Texas surrendered title of the truck to the Minnesota Department of Motor Vehicles, which then issued a Certificate of Title with the odometer reporting 90,227 as the actual mileage. (*Id.* ¶ 33.) In November 2021, F.S. traded in the truck to Defendant BB Motor, a Minnesota auto dealership. (*Id.* ¶¶ 8, 34.) On the Certificate of Title, F.S. completed Assignment of Title and certified the truck's actual mileage as 99,864. (*Id.* ¶ 34.) In January 2022, BB Motor sold the truck at an auto auction to Minnesota Truck Headquarters (MTH) located in Minnesota. (*Id.* ¶¶ 10, 37.) As part of that sale, BB Motor certified that the truck's odometer reading of 99,879 was its actual mileage. (*Id.* ¶ 37.) Finally, on January 25, 2022, MTH sold the truck to Henley. (*Id.* ¶ 38.) MTH told Henley that the truck's actual mileage was 99,893. (*Id.* ¶¶ 11, 38.)

In May 2022, Henley sought to trade the truck in at an auto dealership in Minnesota. (*Id.* ¶ 18.) That dealership informed Henley that the truck had over 200,000 miles and the odometer was rolled back. (*Id.*) It also provided Henley with a report showing the truck's mileage history. (*Id.*)

On January 24, 2024, Henley filed this Complaint, which alleges that Neessen, ARC, and BB Motor violated the Federal Odometer Act (Count I), ARC and BB Motor violated the Minnesota Odometer Act (Count II), and Defendant Auto-Owners Insurance Company is liable under Minn. Stat. § 168.27 (Dealer Bond Liability) (Count III). (*Id.* ¶¶ 39–50.) Auto-Owners Insurance Company has since brought crossclaims against ARC and BB Motor. (Doc. No. 23.)

Henley alleges that given Neessen's, BB Motor's, and ARC's sophistication and experience as auto dealerships, Neessen, BB Motor, and ARC knew or should have known

4

that the truck had substantially more miles than what they disclosed and certified upon transferring truck. (*Id.* ¶¶ 23–28, 30–32, 35–37.)

## DISCUSSION

### I. ARC'S MOTION TO DISMISS

ARC moves to dismiss Counts I and II of the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 19.) Count I of the Complaint alleges that ARC violated 49 U.S.C. § 32705(a)(1) and (a)(2) of the Federal Odometer Act. (Compl. ¶¶ 39–41.) Count II alleges that ARC violated the Minnesota Odometer Act, Minn. Stat. § 325E.13–.16.[1] (*Id.* ¶¶ 42–46.) ARC argues that the Complaint is "void of credible allegations or evidence that ARC knew or should have known the odometer was allegedly incorrect." (Doc. No. 20 at 4.) The Court disagrees with ARC's characterization of the factual allegations and, therefore, denies the motion.

When reviewing a motion to dismiss under Rule 12(b)(6), the Court considers all facts alleged in the complaint to be true and then determines whether they state a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A pleading has facial

---

[1] The federal and state Odometer Acts prohibit automobile sellers from misrepresenting the mileage registered on the odometer and require sellers to disclose and certify the accuracy of the odometer reading. 49 U.S.C. § 32705; Minn. Stat. § 325E.15. Minnesota Statute section 325E.15 adopts by reference the prohibitions contained in the Federal Odometer Act; therefore, the claims rise and fall together. Minn. Stat. § 325E.15 ("The regulations contained in Code of Federal Regulations, title 49, sections 580.1 to 580.17, that implement odometer disclosure requirements and prescribe the manner in which electronic or written disclosure must be made in this state are adopted by reference.")

plausibility when its factual allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In this analysis, the Court construes the allegations and draws inferences from them in the light most favorable to the plaintiff. *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018).

The Federal Odometer Act sets forth written disclosure requirements that apply to those transferring ownership of a motor vehicle. 49 U.S.C. § 32705(a); *see also Tusa v. Omaha Auto. Auction Inc.*, 712 F.2d 1248, 1249 (8th Cir. 1983)[2] ("The Act and the regulations promulgated under its authority require a transferor to fill out a disclosure form which gives the odometer reading and certifies that it is accurate to the best of the transferor's knowledge."). The transferor must disclose the cumulative mileage registered on the vehicle's odometer. 49 U.S.C. § 32705(a)(1)(A). However, if the transferor "knows that the odometer reading is different from the number of miles the vehicle has actually traveled," then the transferor must disclose that "the actual mileage is unknown." *Id.* § 32705(a)(1)(B); *Tusa*, 712 F.2d at 1252 (explaining that the word "knowingly" was added "so that the auto dealer with expertise now would have an affirmative duty to mark 'true mileage unknown' if, in the exercise of reasonable care, he would have reason to

---

[2] While *Tusa* was published in 1983, before the criminal odometer-tampering statutes previously located at 15 U.S.C. §§ 1981 et seq. were recodified within Title 49, the precedent set under the Title 15 statutes was unaffected. *See* Pub. L. No. 103-272, § 6(a) 108 Stat. 1378 (1994) (noting that new Act's restatement of prior law "may not be construed as making a substantive change in the laws replaced"); *see also* U.S. Dep't of Just., Civ. Res. Manual § 150 (2009) ("Case precedent under the Title 15 statutes was . . . unaffected by the move to Title 49."

know that the mileage was more than that which the odometer had recorded or which the previous owner had certified" (quotation omitted)).

The transferor "may not violate a regulation prescribed under [section 32705] or give a false statement to the transferee in making the disclosure required by such a regulation."  49 U.S.C. § 32705(a)(2).  The Act imposes liability on those who violate section 32705 of the Act "with intent to defraud."  49 U.S.C. § 32710; *see Ryan v. Edwards*, 592 F.2d 756, 761 (4th Cir. 1979) (noting that, under the Act, "proof of intent to defraud" is required "before liability can be imposed").  A transferee can prove intent to defraud by showing that the transferor had "actual knowledge," "exhibited gross negligence or a reckless disregard for the truth in preparing odometer disclosure statements," or "lack[ed] actual knowledge of a false odometer statement only by closing [their] eyes to the truth."  *Tusa*, 712 F.2d at 1253–54.

Here, Henley alleges that ARC knew or should have known that the mileage it disclosed and certified when selling the truck—90,277—was not the truck's actual mileage for the following five reasons: (1) reports used in the regular course of purchasing and selling vehicles detail the truck's history and consistently report the truck's mileage as over 100,000 (Compl. ¶¶ 21–22, 30); (2) results of annual vehicle inspections in Texas, which included the truck's prior odometer readings were readily accessible (*id.* ¶ 21); (3) ARC purchased the truck from Neessen through an auction that advertised the truck as "not actual miles" (*id.* ¶ 26); (4) when selling the truck to ARC, Neessen signed an Affidavit of Fact, which showed the present mileage on the odometer was not the actual mileage and listed 150,025 as the correct mileage (*id.* ¶¶ 26–28); and (5) ARC included Neessen's

7

Affidavit of Fact as part of the application it completed to title the truck in Minnesota in F.S.'s name. (*Id.* at ¶ 32.)

If these factual statements are true, then ARC had—at the least—a reason to know that the truck's mileage was higher than what the truck's odometer reflected and higher than what Neessen had certified. ARC, therefore, had a statutory duty to state that the truck's actual mileage was unknown, *see* 49 U.S.C. § 32705(a)(1)(B); *Tusa*, 712 F.2d at 1252, and the Complaint plausibly alleges violations of the Federal Odometer Act and the Minnesota Odometer Act. Therefore, we deny ARC's Motion to Dismiss for failure to state a claim.

## II. NEESSEN'S MOTION TO DISMISS

Neessen moves to dismiss Count I of the Complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and as barred by the statute of limitations under Rule 12(b)(6). (Doc. No. 28.) Each ground for dismissal is addressed in turn.

### A. Personal Jurisdiction

Neessen first argues that it is not subject to personal jurisdiction because it lacks minimum contacts with Minnesota. (Doc. No. 28 at 3.) The Court disagrees.

When reviewing a motion to dismiss under Rule 12(b)(2), the Court considers whether the plaintiff has made a prima facie showing that the defendant is subject to personal jurisdiction in the forum state. *Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 951 (8th Cir. 2022). The Court views all facts alleged in the complaint and evidence outside of the pleadings, such as affidavits and exhibits, in the light most

favorable to the plaintiff and resolves factual conflicts in the plaintiff's favor to determine whether the plaintiff has made the minimal evidentiary showing as required. *Id.*

Where the applicable federal statute does not authorize nationwide personal jurisdiction, the existence of personal jurisdiction depends on the forum state's long-arm statute and the federal Due Process Clause. *Id.*; Fed. R. Civ. P. 4(k)(1)(A). Minnesota's long-arm statute permits personal jurisdiction over nonresident defendants to the extent permitted by the federal Due Process Clause. *Pederson v. Frost*, 951 F.3d 977, 980 (8th Cir. 2020); *see* Minn. Stat. § 543.19. Due process requires that the nonresident defendant have "minimum contacts with the forum state such that the maintenance of the lawsuit does not offend traditional notions of fair play and substantial justice." *Fastpath, Inc. v. Arbela Tech. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014). The minimum contacts requirement is intended to ensure that nonresident defendants are not "haled into a jurisdiction solely as the result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person." *Id.* at 821. Sufficient minimum contacts exist when a nonresident defendant's contacts with the forum state are such that the defendant should reasonably anticipate being haled into court there. *Id.* at 820–21. This Court must apply the following five factors to evaluate a defendant's minimum contacts: "(1) the nature and quality of [defendant's] contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in

9

providing a forum for its residents; and (5) convenience of the parties." *Kendall Hunt Publ'g Co. v. Learning Tree Publ'g Corp.*, 74 F.4th 928, 930 (8th Cir. 2023).[3]

In matters where the cause of action involves an intentional tort, this Court must also apply the "effects test" set forth in *Calder v. Jones*, 465 U.S. 783 (1984), as an additional factor in its minimum contacts analysis. *Kendall v. Hunt Publ'g Co.*, 74 F.4th at 931. Under that test, the Court considers whether "the defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—[in the forum state]." *Id.*

Here, the factual allegations contained in the Complaint and Henley's Exhibit A (Doc. No. 39), when viewed in the light most favorable to Henley, satisfy the minimal evidentiary showing required at this stage of the proceedings. The most pertinent allegations and evidence for purposes of reaching a decision on the motion include the following six allegations: (1) Neessen is a "sophisticated and experienced auto dealership" that has bought and sold new and used vehicles for decades and regularly relies on reports that detail the mileage history of the vehicles it buys and sells (Compl. ¶ 24); (2) Neessen knew when it sold the truck to ARC that ARC was a Minnesota dealership that would sell the truck to consumers in Minnesota (*id.* ¶ 26; Doc. No. 39 at 7, 12); (3) to complete the

---

[3] The relevance of the defendant's conduct and connections to the forum state will vary depending on whether personal jurisdiction is alleged to be general or specific. *Bros. & Sisters in Christ*, 42 F.4th at 951–52. Here, the Court only considers whether it has specific personal jurisdiction over Neessen because Henley does not argue that Neessen is subject to general personal jurisdiction. (Doc. No. 40 at 2–9.)

sale and transfer ownership of the truck to ARC, Neessen certified on the back of the truck's Certificate of Title, in the section titled "First Reassignment Dealer Only," that to the best of its knowledge the odometer reading of 90,103 was the truck's actual mileage (Compl. ¶ 26; Doc. No. 39 at 6–7); (4) Neessen did not check the box that would have warned ARC that there was an odometer discrepancy, and that the odometer reading was not the truck's actual mileage, even though it knew that the truck's mileage was substantially more than 90,103 (Compl. ¶ 25; Doc. No. 39 at 7); (5) Neessen also completed an affidavit, which purported to correct the mileage disclosure it had made on the back of the truck's Certificate of Title, by stating that "[t]he correct odometer on the assignment is: 150025," even though it knew that the truck's mileage was over 200,000 (Compl. ¶ 27; Doc. No. 39 at 12); and (6) Neessen acted with intent to defraud. (Compl. ¶ 40.)

### i. Three Primary Factors

The first three factors (the nature and quality of the contacts, the quantity of the contacts, and the relationship between the contacts and the cause of action) relate to the contacts themselves and "carry[] the greatest weight." *Kendall Hunt Publ'g Co.*, 74 F.4th at 930. Overall, these first three factors weigh in favor of finding that Neessen is subject to personal jurisdiction in Minnesota.

The nature and quality of Neessen's contacts with Minnesota are serious in that they involve direct efforts to deceive an auto dealership operating in Minnesota by providing two allegedly fraudulent vehicle transfer documents with knowledge that these documents would need to be submitted to a state, likely the State of Minnesota, for the truck's title to be transferred to a future purchaser. *See* 49 U.S.C. § 32705(b)(1) (stating that a motor

11

vehicle involved in a transfer of ownership "may not be licensed for use in a State unless the transferee . . . includes with the application the transferor's title and . . . a statement . . . of the mileage disclosure required under subsection (a) of this section."); *see also J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011) ("[I]n some cases, as with an intentional tort, the defendant might well fall within the State's authority by reason of his attempt to obstruct its laws.")  Neessen's intent to defraud goes beyond, merely "random, fortuitous, or attenuated" contacts or contacts that are the result of "the unilateral activity of another party or a third person." *Fastpath, Inc.*, 760 F.3d at 821. The alleged fraudulent nature of its conduct, directed at a Minnesota auto dealership, make it so that Neessen could reasonably anticipate being haled into court in Minnesota. *Id.* at 820–21. Factor one weighs in favor of subjecting Neessen to personal jurisdiction in Minnesota.

Although the quantity of Neessen's contacts with Minnesota are less than in some cases where courts have found sufficient minimum contacts to exercise jurisdiction, the second factor also weighs in favor of denying Neessen's motion. Courts conclude sufficient minimum contacts exist when a nonresident defendant has engaged in conduct that was directed at the forum state and directly related to the alleged cause of action. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) ("Jurisdiction . . . may not be avoided merely because the defendant did not physically enter the forum State."); *Rennenger v. Aquawood, LLC*, No. 4:19-CV-00123-RGE-SBJ, 2020 WL 6472686, at *6 (S.D. Iowa Mar. 27, 2020) (finding sufficient contacts existed where nonresident defendant had not visited the forum state but had submitted "an allegedly false affidavit" to a court in the forum state). Moreover, Neessen's conduct is distinct from cases where courts have

found that mere placement of a product in the stream of commerce is insufficient to establish minimum contacts. *See Bros. & Sisters in Christ, LLC*, 42 F.4th at 953 (finding minimum contacts did not exist where resident of forum state initiated online purchase of trademark infringing goods from defendant's nationally available website that did not target forum state, and defendant's contacts with forum state were not otherwise connected to the alleged trademark infringement); *see also Asahi Metal Indus. v. Superior Ct. of Cal.*, 480 U.S. 102, 103–04 (1987). Here, Neessen's conduct went beyond the mere sale of the truck to ARC through an auction. It also involved Neessen's preparation and provision of allegedly fraudulent transfer documents to ARC, which directly impacted the State of Minnesota and its residents. Specifically, Neessen's fraudulent transfer documents were submitted to the Minnesota Department of Public Safety, Driver and Vehicle Services in order for it to issue Certificate of Title for the truck in Minnesota. (Compl. ¶ 33; Doc. No. 38 ¶ 2; Doc. No. 39 at 6–7, 12.) Factor two weighs in favor of subjecting Neessen to personal jurisdiction in Minnesota.

In analyzing the third factor, courts consider whether a defendant directed actions at residents of the forum and the extent to which the claims at issue arose from those particular contacts. *See Guinness Import Co. v. Mark VII Distrib. Inc.*, 153 F.3d 607, 614 (8th Cir. 1998) ("With regard to the third factor, if specific jurisdiction is asserted . . . due process is satisfied if the defendant has purposely directed its activities at forum residents, and the litigation results from injuries arising out of, or relating to, those activities."); *see also Kendall Hunt Publ'g Co.*, 74 F.4th at 930 ("A court has specific jurisdiction over an out-of-state defendant when the defendant purposely directed its activities at residents of

the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." (quotation omitted)). Henley's claim that Neessen violated the Federal Odometer Act "with intent to defraud" directly arises out of and relates to Neessen's preparation and provision of allegedly fraudulent transfer documents to ARC and, in turn, to the State of Minnesota. Additionally, Henley alleges that he was injured as a result of Neessen's violations. (Compl. ¶ 41.) Factor three weighs in favor of subjecting Neessen to personal jurisdiction in Minnesota.

### ii. Two Secondary Factors

The last two factors (the forum state's interest in providing a form to its residents and the convenience of the parties) "are not determinative or . . . dispositive," meaning that they "cannot establish jurisdiction when there are not otherwise minimum contacts with the forum." *Blue Cross & Blue Shield of N.C. v. Rite Aid Corp.*, 519 F. Supp. 3d 522, 534 n.3 (D. Minn. 2021) (quotations omitted). Nevertheless, the Court concludes that the two secondary factors also weigh in favor of denying Neessen's motion.

Minnesota has an interest in regulating vehicles with incorrect odometer readings because such vehicles can negatively affect the safety of Minnesota roadways and cause financial harm to Minnesota residents. Minnesota also has an interest in enforcing the Minnesota Odometer Act. Further, three of the parties to this suit (Henley, ARC, and BB Motor) are Minnesota residents. Thus, factor four weighs in favor of subjecting Neessen to personal jurisdiction in Minnesota.

Finally, Minnesota is a convenient forum for this action for all defendants except Neessen. All parties to the lawsuit, except Neessen and Auto-Owners, are Minnesota

residents. (Compl. ¶¶ 5–9.) Auto-Owners is, however, licensed to sell insurance in Minnesota and has brought crossclaims against ARC and BB Motors that are currently pending before this Court. (*Id.* ¶ 9; Doc. No. 23.) Factor five weighs in favor of subjecting Neessen to personal jurisdiction in Minnesota.

### iii. *Calder* "Effects Test"

Because the Complaint alleges an intentional tort, the Court must also consider the three factors of the *Calder* effects test (whether defendant's actions were intentional, the extent to which the actions were uniquely or expressly aimed at the forum state, and the extent to which the resulting harm was suffered—and which the defendant knew was likely to be suffered—in the forum state). *Kendall Hunt Publ'g Co.*, 74 F.4th at 931. Each factor favors denying Neessen's motion.

First, Henley alleges in his Complaint and offers evidence that Neessen acted with "intent to defraud" because it certified that the truck's odometer reading was accurate when it knew that it was not and then dubiously purported to correct its certification by certifying, once again, mileage that it knew was inaccurate. (Compl. ¶¶ 24–27, 40; Doc. No. 39 at 7, 12.) When viewed in the light most favorable to Henley, the Complaint adequately alleges intent to satisfy the first *Calder* factor.

Second, as noted above, Neessen's acts were uniquely and expressly aimed at Minnesota. Indeed, the Complaint alleges that Neessen prepared and provided two allegedly fraudulent vehicle transfer documents to ARC, with knowledge that ARC owned a Minnesota auto dealership that would sell the truck to consumers in Minnesota, and with knowledge that these documents would need to be submitted to a state, likely the State of

Minnesota, for the truck's title to be transferred to a future purchaser. (*Id.* ¶¶ 24–27, 40); *see* 49 U.S.C. § 32705(b)(1).

Third, and finally, the Complaint alleges that Neessen's preparation and provision of allegedly fraudulent transfer documents caused harm in Minnesota. As a sophisticated auto dealer familiar with the laws governing the sale and transfer of title to a future purchaser, Neessen knew that the harm was likely to occur in Minnesota where the future purchaser resided. (Compl. ¶¶ 24, 26, 33; Doc. No. 38 ¶ 2; Doc. No. 39.); s*ee* 49 U.S.C. § 32705(b)(1). In addition, as evidenced by the crossclaims brought against ARC and BB Motor and the fact that all of the alleged conduct following Neessen's sale and transfer of the vehicle to ARC occurred in Minnesota, the harms extend beyond the initial Minnesotan owner of the truck. (*Id.* ¶¶ 18, 32–34, 37–38; Doc. No. 23.)

Given totality of the circumstances, sufficient minimum contacts exist and Neessen is subject to personal jurisdiction in Minnesota. Neessen's motion to dismiss the action for lack of personal jurisdiction is denied.

### B.      Statute of Limitations

Neessen also argues that the action is time-barred because the statute of limitations closed in November 2021 (within two years of the auction that took place in November 2019 or when ARC should have known the truck's mileage was incorrect because it was announced that the truck was being sold as "not actual miles"). (Doc. No. 28 at 9–10.) Again, the Court disagrees.

An action brought under section 32705 "must be brought not later than 2 years after the claim accrues." 49 U.S.C. § 32710(b). The purpose of the Federal Odometer Act is

16

"to provide safeguards to protect purchasers in the sale of motor vehicles with altered or reset odometers." 49 U.S.C. § 32701(b)(2). In as much as the Federal Act is founded upon fraudulent conduct, the federal courts are bound to employ the federal "discovery rule" when applying the Federal Act's statute of limitations. *See, e.g.*, *Att'y Gen. of Md. v. Dickson*, 717 F. Supp. 1090 (D. Md. 1989), *appeal dismissed*, 914 F.2d 247 (4th Cir. 1990); *State of Utah by Wilkinson v. B & H Auto*, 701 F. Supp. 201, 203 (D. Utah 1988) (citing *Byrne v. Autohaus on Edens, Inc.*, 488 F. Supp. 276, 280 (N.D. Ill. 1980); *Carrasco v. Fiore Enterprises*, 985 F. Supp. 931 (D. Ariz. 1997); *Alexander v. Se. Wholesale Corp.*, 978 F. Supp. 2d 615 (E.D. Va. 2013). "Under the federal discovery rule, the statute of limitations begins to run when a plaintiff actually discovers, or a reasonably diligent plaintiff would have discovered, the facts constituting the violation." *Zarecor v. Morgan Keegan & Co.*, 801 F.3d 882, 887 (8th Cir. 2015) (quotation omitted). The Court therefore concludes that a cause of action under the Federal Odometer Act begins to accrue when the purchaser discovers, or should have discovered, an odometer discrepancy.

Applying that principle to the instant case, Henley alleges that he purchased the truck on January 25, 2022, and Henley filed his complaint on January 24, 2024. (Compl. ¶ 10.) Because the earliest date that Henley reasonably could have discovered the alleged violations of the Federal Odometer Act is the date that he purchased the truck, Henley's Complaint cannot be time-barred as a matter of law. Neessen's motion to dismiss the action as time-barred is denied.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1. Defendant Automotive Restyling Concepts, Inc.'s Motion to Dismiss (Doc. No. 19) is DENIED; and

2. Defendant Neessen Chevrolet, Inc.'s Motion to Dismiss (Doc. No. 27) is DENIED.

Dated: September 16, 2024

/s/ *Jeffrey M. Bryan*
Judge Jeffrey M. Bryan
United States District Court